We'll hear next from the participants in the matter of Manisha Singh versus Memorial Sloan Kettering. Case number is 23-63. Ms. Singh, once you're ready and take the time you need to make sure you're ready, you'll have seven minutes on your initial presentation and then three minutes on rebuttal after we hear from Defendant's Counsel. So just move here to the podium and that lowers. I can tell you every time I was here I had to lower the podium. There's a magic button on the side there that will lower the whole thing. Our CSO will help you with that. There it is. Thank you. All right. So you've got a red light, yellow light, green light. When it goes red that means your time is up and we'll just let you wrap up the thought you're making when we get to that point. All right? Whenever you're ready to start you can begin. Thank you, Your Honors. May it please the court. I am Dr. Manisha Singh, the appellant in this case. I have devoted my life to one mission, finding a cure for cancer. For 15 years I built a successful scientific career in the United States navigating challenges as an immigrant and a woman of color. However, my journey was tragically disrupted after I joined Memorial Sloan Kettering Cancer Center as a postdoctoral researcher. From the moment I arrived at MSKCC I faced discrimination, harassment, and tortious interference. My supervisor, Dr. Kishore Pillarsethi, subjected me to abuse and sexual harassment on the premises of the institution. Despite my effort to report this misconduct to department heads, HR, and... Take a deep breath. We'll give you a little extra time when you catch up, okay? for truthfulness and accountability. The trauma inflicted upon me was severe and life-altering. I developed significant physical and mental health conditions including PTSD, major depression, conversion disorder, and anxiety disorder. Despite my academic excellence and unwavering dedication, the hostile, oppressive, and discriminatory environment at MSKCC rendered me disabled. The humiliation and worthlessness I endured were compounded by the institution's inaction, leaving me powerless to combat the horror of my circumstances. My dependency on MSKCC further intensified my vulnerability. The institution sponsored my H-1B visa and was in the process of securing my green card. They also provided my housing, making my livelihood and immigration status entirely dependent on my employment there. The retaliation not only resulted in my wrongful termination, but also halted my immigration process, leaving me trapped in an untenable situation. The jury verdict reveals a devastating inconsistency. They found the defendant guilty of sexual assault, but not sexual harassment. I really want to focus on this point. It is crucial to emphasize that any non-consensual touching in the workplace, especially when it involves intimate areas such as women's breasts, buttocks, thighs, and back, constitutes harassment. As a member of a protected class, I was subjected to behavior that violated my privacy and dignity. MSKCC, as an institution and employer, failed in their duty to protect me and properly address my complaint, making them accountable for 1. Sexual harassment 2. Retaliation and wrongful termination 3. Failure to provide a safe and non-discriminatory workplace 4. Negligence in handling my complaint 5. Compromising my health and immigration status My extensive medical records, including multiple hospitalizations, documents, and trauma injuries I suffered due to MSKCC inaction. These conditions, which were absent before 2016, are directly the consequences of their violation. MSKCC is responsible for my health disability that resulted from their failure to act. The sexual harassment profoundly impacted my mental health and livelihood. I experienced severe physical symptoms such as nausea, stomach aches, and overwhelming distress whenever I was touched inappropriately. I often lay down on a grass outside, unable to cope up with the harassment I endured. I frequently cried, feeling weak, isolated, and unable to function. Nightmare haunted me, replaying the trauma inflicted by my supervisor's actions. Even after my termination, Dr. Villasetti continued his unwanted advances, touching my back and buttocks. This ongoing harassment and abuse, coupled with MSKCC's failure to intervene, led to panic attacks, darkness, and hospitalization. Despite my attempt to rebuild my career, my health deteriorated. Can you tell me what is it you want in the way of relief from this court? Do you want us to order a new trial? Yes. A new trial on everything? Yes. That's what I wrote in my conclusion also. I respectfully request this court overturn the jury decision due to inconsistency in their finding and the overwhelming evidence of harm I suffered as a result of MSKCC's inaction. The court has an inherent power to correct an injustice, and this appeal is not only about seeking justice for myself. Do you understand that if there's a new trial, there may be a determination that you get nothing? I'm fine with it. I'm just looking for justice. I did not get justice in a district court, and that's why I'm here. And it's not about just me, because I feel that it is about addressing systemic issues that affect vulnerable individuals in STEM and workplaces across the country. With court intervention, I seek to reclaim my right, restore my dignity, and pave the way for a more just and equitable workplace for all. Thank you, Doctor. You'll have three minutes to respond if you choose. You won't have to, to Ms. Chase's arguments when she's done. Thank you. Ms. Chase, you'll have ten minutes when you're ready. Thank you. Good morning, and may it please the court. Terry Chase of Jones Day on behalf of Appellees. I think it's important to recognize the context that brings us here today. Dr. Manisha Singh was ably represented by counsel throughout the discovery process and throughout trial. We had a trial, an eight-day trial, in the Southern District in which a jury concluded that Dr. Manisha Singh's claims of sexual harassment and retaliation were not sustained. They found for Dr. Manisha Singh on one and only one of the counts in her action. They found that Dr. Kishore Pillaseddy engaged in battery, which under the jury charge, appropriate under the law in the state of New York, involves a finding that there was offensive bodily contact without consent. There was no finding of sexual – sorry, Your Honor. Any finding of sexual content or intent? No, Your Honor. That was exactly the point I was intending to make. There was no finding by this jury of sexual harassment. There was no finding by this jury of sexual assault. And this is a case that is entirely appropriately within the purview of a jury. There were extensive credibility assessments made by this jury. Dr. Manisha Singh testified. Dr. Kishore Pillaseddy testified. Coworkers testified. They weighed the evidence. And after having weighed the evidence presented with appropriate jury charges, which were not a challenge post-trial, they found only on one claim. And on that one claim, they awarded Dr. Manisha Singh $50,000 in compensatory damages. And that is the challenge that was raised by her counsel post-trial in a Rule 59 motion seeking to argue that the compensatory damage award of $50,000 was against the weight of the evidence. Judge Daniels heard that motion. Again, still ably represented by counsel through that time. And Judge Daniels appropriately applied the appropriate standard of review and looked at comparable case laws for verdicts involving a battery finding. And the appropriate case law found that this verdict of $50,000 did not materially deviate from what would be appropriately compensatory in this context. And what Dr. Singh argued in her post-trial motion and what she argued in this appeal was relying extensively on cases that are not remotely applicable, on cases where the jury found there had been sexual harassment or found there had been retaliation, which they did not find here. She also relies extensively on two battery cases that are not remotely analogous. These were excessive force police brutality cases where there were ample and serious physical injuries that were not disputed. They were documented by medical evidence. We don't have any of those facts. And so Judge Daniels appropriately determined that there was no reason to order a new trial. This case now comes in front of this Court on an issue where the challenge is against the weight of the evidence, which is the challenge that under Second Circuit decisions such as in Cunningham, but well-established case law, is one of the few issues that is not reviewable on appeal. And even if the Court were to get beyond that issue and decide to review this challenge, it would be an abuse of discretion standard. And there is nothing in this record to suggest that it was an abuse of discretion for Judge Daniels to find that the verdict and the award of $50,000 did not materially deviate from the case law for comparable battery charges. Now, as you heard from Dr. Singh, she is also arguing to this Court that she wants the verdict thrown out beyond just as it relates to the issue of compensatory damages and whether that award was adequate. She is arguing for the first time on appeal that the verdict of sexual harassment being for defendants and the verdict on retaliation and the verdict that there was no vicarious liability for the institution with respect to Dr. Pillarsetti's conduct, that those should be overturned. These were issues that were not raised post-trial at the point in time in which she did have counsel. And as this Court is well aware, the circumstances in which the appellate court will review an issue that was not raised in a post-trial motion is quite limited. And it should involve circumstances where there is a purely legal issue, which, of course, is not the case here. This is a highly fact-specific situation, or there would be a manifest injustice. And those circumstances do not exist here. There is ample evidence to support the jury's findings. They could easily credit the testimony of her coworkers, which was contradicting her testimony, that she never complained about sexual harassment until after her employment was terminated or she was informed that her employment was being terminated on July 6th of 2016. There is also ample testimony of significant performance issues that led to the decision not to renew her appointment for a third year. The jury could have found, just based on Dr. Watson's testimony, that there was significant concerns of academic integrity with respect to her work. So there was ample grounds for this verdict. And these are exactly the type of credibility decisions that, even had they been raised post-trial appropriately at the time in which they should have been raised, would not have been the type of challenges that would have warranted overturning this decision. And so for that reason, we respectfully request that this court affirm the decision of the district court. Thank you. Thank you, counsel. Ms. Singh, if you wish to address us again, you've reserved, I think it was three minutes, yes, three minutes for rebuttal to respond to anything Ms. Chase has raised or to mention anything you didn't get a chance to mention before. Thank you, judges. I'm not a lawyer, so I think I cannot go into technicality. I think judges have to refer to my brief and reply brief for that. But I wanted to mention two points. She mentioned specifically Dr. Watson, and there was an email exchange between Dr. Watson and me about my supervisor. That was, I already sent them to, for discovery, but whenever we wanted to present in front of court, in front of jury, they said they never got that. So there was some technical issue. Whatever documents I wanted to present, they always had, they never received it. My problem was, I had, my lawyers were changed over their time. So I have to mention that part also. And I also mentioned that in my reply brief. So I have to say, my previous lawyer deliberately, some of the things they left out, the charges, despite of my repeated results, request from, to be included, whatever Ms. Chase is mentioning. They ignored critical points I wanted to bring to the court, leaving me feeling helpless. The failure to prevail all the relevant information compromised my ability to fully convey the extent of my experience and harm I suffered. And this omission affected the proper representation of my case, hindering the pursuit of justice and truthfulness. The misrepresentation of truth and fact by my own legal counsel underscored the need for the court to carefully examine all evidence and endure that the truth prevails. For me, it's just not about, I mean, I have been prosecuted all of my cases. There was a few times lawyers came and they also kind of deceived me in some way. So I, those are the reasons I really, this, I am, I'm sorry, I think I lost my train of thought. That's okay. But I wanted to answer her. Would you want to conclude by telling us what you think it would be right for the court to do in your case? Yes, I am looking for justice and this is very, I think court had inherent power to provide me justice and I'm here for justice. And I feel that all my eight years of struggle hasn't given me, if I don't get justice in the U.S. and in New York, where in the world I will get justice. And thank you very much. Thank you. That was well done by both of you. Thank you for your arguments. We will reserve decision on the case.